UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
MARIA ZAMBRANO and YISELA JARAMILLO, individually
and on behalf of all others similarly situated,

                                Plaintiffs,

                -against-

ENVIOS ESPINOZA, INC., ENVIOS ESPINOZA TELEFONICA
MULTISERVICES CORP. D/B/A ENVIOS ESPINOZA, JOHN
DOE CORPORATION #1 D/B/A ENVIOS ESPINOZA
ENTERPRISES, JOHN DOE CORPORATION #2 D/B/A ENVIOS
ESPINOZA & CO., JULIO ESPINOZA, FAUSTO CANDO, and
DORIS CANDO,

                                Defendants.
--------------------------------------------------------------------------------X

CIVIL ACTION NO.

COMPLAINT

       Plaintiffs Maria Zambrano ("Zambrano") and Yisela Jaramillo ("Jaramillo") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, Katz Melinger PLLC, complaining of the defendants, Envios Espinoza, Inc. ("Espinoza, Inc."), Envios Espinoza Telefonica Multiservices Corp. d/b/a Envios Espinoza ("Telefonica"), John Doe Corporation #1 d/b/a Envios Espinoza Enterprises ("Enterprises"), John Doe Corporation #2 d/b/a Envios Espinoza & Co. ("Envios Espinoza & Co."),  Julio Espinoza ("Julio"), Fausto Cando ("Fausto"), and Doris Cando ("Doris") (collectively, "Defendants"), respectfully allege as follows:

### I. Nature of Action, Jurisdiction, and Venue

       1.      This is an action seeking equitable and legal relief for Defendants' violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. ("FLSA"), the New York Labor Laws §§ 190 *et seq*. and 650 *et seq*. ("NYLL"), and the Internal Revenue Code, 26 U.S.C. § 7434.

       2.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that this is an action arising under the FLSA and 26 U.S.C. § 7434.

3.     This Court has supplemental jurisdiction over the claims arising under New York state law pursuant to 28 U.S.C. § 1367, in that the New York state law claims are so closely related to Plaintiffs' federal claims as to form the same case or controversy under Article III of the United States Constitution.

4.     Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, and Defendants conduct business through their employees, including Plaintiffs, within this judicial district.

## II. Parties

5.     Plaintiffs are individuals residing in the State of New York.

6.     At all relevant times, Plaintiffs were employed by Defendants.

7.     While employed with Defendants, Plaintiffs were regularly engaged in interstate commerce and/or in the production of goods for commerce.

8.     Plaintiffs are covered employees within the meaning of the FLSA and NYLL.

9.     Espinoza, Inc., is a domestic corporation with its principal place of business located at Two Graces Way, Centereach, New York, 11720.

10.     Telefonica is a domestic corporation with its principal place of business located at 350 East Main St., Patchogue, New York, 11772.

11.     Espinoza, Inc., Telefonica, Enterprises, and Envios Espinoza & Co. (collectively "Corporate Defendants") are part of a single enterprise and operate in several locations as money transfer service providers doing business as Envios Espinoza.

12.     The Corporate Defendants have locations at 16 Middle Country Rd., Suite 11, Coram, NY 11727 (the "Coram Location"); 828 Horseblock Rd, Farmingville, NY 11738 (the

"Farmingville Location"); 1234 Middle Country Rd, Selden, NY 11784 (the "Selden Location"); and 350 East Main St., Suite 11, Patchogue, NY 11772 (the "Patchogue Location").

13.     Upon information and belief, Julio, Fausto, and Doris are individuals residing in the State of New York.

14.     At all relevant times, Julio, Fausto, and Doris were owners and/or managers of the Corporate Defendants.

15.     At all relevant times, Julio, Fausto and Doris were and still are officers, directors, shareholders, owners, and/or persons in control of the Corporate Defendants, who exercise significant control over the Corporate Defendants' operations and had the authority to hire, fire, and discipline their employees; set employees' work schedules and conditions of employment; determine the rate and method of payment for employees; and maintain employment records.

16.     At all relevant times, Defendants were responsible for setting Plaintiffs' schedules and day-to-day activities and for supervising their performance.

17.     At all relevant times, Defendants had the power to discipline and terminate Plaintiffs.

18.     At all relevant times, Defendants were responsible for compensating Plaintiffs.

19.     Defendants are a single enterprise and/or joint employers as Defendants operate for the same business purpose and have common ownership and management.

20.     Defendants are a single enterprise and/or joint employers, who jointly managed, supervised, hired, fired, and controlled the manner of pay of Plaintiffs, and are jointly and severally liable in this matter.

21.     Defendants are covered employers within the meaning of the FLSA and the NYLL and, at all relevant times, employed Plaintiffs.

22.     Upon information and belief, at all relevant times, Defendants' gross revenues were in excess of $500,000.00 per year.

23.     Defendants operate in interstate commerce.

24.     Defendants are subject to suit under the statutes alleged above.

### III. FLSA Collective Action Allegations

25.     The First Cause of Action in this Complaint, which arises out of the FLSA, is brought by Plaintiffs on behalf of themselves and similarly situated persons who were employed during the relevant time period and who elect to opt-in to this action (the "FLSA Collective Plaintiffs").

26.     The FLSA Collective Plaintiffs consist of no less than ten (10) similarly situated current and former employees of Defendants who, during their employment with Defendants, work or worked in excess of forty (40) hours per week and who were damaged due to Defendants' common policy and practices in violation of the FLSA including, *inter alia*, willfully denying them overtime wages.

27.     As part of their regular business practices, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs and the FLSA Collective Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA. This policy and pattern or practice includes, *inter alia*, failing to pay employees their overtime rates.

28.     Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation.

29.     Defendants' unlawful conduct has been intentional, willful, in bad faith, and has caused significant damages to Plaintiffs and the FLSA Collective Plaintiffs.

30.     The FLSA Collective Plaintiffs would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants, are readily identifiable, and are locatable through Defendants' records. These similarly situated employees should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).

### IV. Factual Allegations

<u>Maria Zambrano</u>

<u>Work Schedule and Rates of Pay</u>

31.     Defendants employed Zambrano as a cashier from in or around October 2006 until on or around March 29, 2021.

32.      As a cashier, Zambrano's primary job duties included operating the cash register, attending clients, answering phones, and preparing documents for shipping.

33.     Throughout her employment with Defendants, Zambrano worked at the Coram Location.

34.     From in or around October 2006 until in or around March 2020, Zambrano regularly worked five (5) days per week, as follows: Mondays and Wednesdays through Saturdays from approximately 9:00 a.m. to approximately 9:00 p.m., without any meal or rest breaks, for a total of approximately sixty (60) hours per week.

35.     From in or around April 2020 until on or around March 29, 2021, Zambrano regularly worked five (5) days per week, as follows: Mondays and Wednesdays through Saturdays from approximately 9:00 a.m. to 8:30 p.m., without any meal or rest breaks, for a total of approximately fifty-seven and a half (57.50) hours per week.

36.     Throughout Zambrano's employment, Defendants neither tracked the hours Zambrano worked, nor required Zambrano to record her time.

37.     From in or around October 2006 until in or around December 2010, Defendants paid Zambrano $7.00 per hour for all hours worked, including those hours worked over forty (40) per week.

38.     From in or around January 2011 until in or around December 2019, Defendants paid Zambrano $9.00 per hour for all hours worked, including those hours worked over forty (40) per week.

39.     From in or around January 2020 until on or around March 29, 2021, Defendants paid Zambrano $10.00 per hour for all hours worked, including those hours worked over forty (40) per week.

<u>Fraudulent Filing of Information Returns</u>

40.     Throughout her employment, Defendants paid Zambrano her wages partially by check and partially in cash.

41.      Defendants issued Internal Revenue Service ("IRS") W-2 Forms to Zambrano for the tax years 2006 through 2021 that only reflected the wages Defendants paid to Zambrano via check during each such year.

42.     As a result, the W-2 Forms that Defendants issued to Zambrano for the tax years 2006 through 2021 did not reflect all wages that Defendants paid to Zambrano during each such year.

43.     Upon information and belief, Defendants filed the W-2 Forms issued to Zambrano for the tax years 2006 through 2021 with the IRS.

44.     Defendants willfully filed false information returns with the IRS as to Zambrano's wages, in violation of 26 U.S.C. § 7434.

<u>Retaliation Against Zambrano</u>

45.     In or around July 2021, Plaintiffs' attorneys sent a demand letter to Defendants outlining the FLSA and NYLL violations asserted in this Complaint.

46.     On or around August 9, 2021, Defendants sent a letter through their attorney, Christopher Ross Esq., alleging that Plaintiffs had stolen $5,000.00 from Defendants, and that Plaintiffs had orchestrated a Ponzi scheme while employed by Defendants.

47.     In or around March 2022, Doris mistakenly believed that Zambrano worked at a business named Express Deli located at 500 Middle country Road, Selden, New York, 11784 ("Express Deli").

48.     Doris unlawfully retaliated against Zambrano by contacting one of Express Deli's owners, Miriam, and falsely alleging that during her employment with Defendants, Zambrano committed fraud and stole money.

49.     Doris also warned Miriam that Zambrano would steal from Express Deli as well.

50.     Doris continued to contact Express Deli several times in or around March 2022, until Miriam finally informed Doris that Zambrano was not employed by Express Deli.

51.     Although Zambrano did not work for Express Deli, Zambrano's husband was in fact employed by Express Deli, and Miriam advised Zambrano's husband about Doris' allegations against Zambrano.

52.     Defendants retaliated against Zambrano for attempting to assert her legal rights under the FLSA and NYLL.

<u>Yisela Jaramillo</u>

<u>Work Schedule and Rates of Pay</u>

53.     Defendants employed Jaramillo as a cashier from in or around November 2013 until on or around December 21, 2020.

54.     As a cashier, Jaramillo's primary job duties included using the cash register, attending clients, answering phones, and preparing documents for shipping.

55.     From in or around November 2013 until in or around December 2016, Jaramillo worked on a rotating basis at all four (4) Envios Espinoza locations, including the Coram Location, the Farmingville Location, the Selden Location, and the Patchogue Location.

56.     From in or around January 2017 until on or around December 21, 2020, Jaramillo worked exclusively at the Patchogue Location.

57.     From in or around November 2013 until in or around April 2020, Jaramillo regularly worked four (4) varied days per week from approximately 9:00 a.m. to approximately 9:00 p.m., without any meal or rest breaks, for a total of approximately forty-eight (48) hours per week.

58.     From in or around April 2020 until on or around December 21, 2020, Jaramillo regularly worked four (4) varied days per week from approximately 9:00 a.m. to approximately 8:30 p.m., without any meal or rest breaks, for a total of approximately forty-six (46) hours per week.

59.     Throughout Jaramillo's employment with Defendants, Defendants neither tracked the hours Jaramillo worked, nor required Jaramillo to record her time.

60.     From in or around November 2013 until in or around December 2014, Defendants paid Jaramillo $6.50 per hour for all hours worked, including those hours worked over forty (40) per week.

61.     From in or around January 2015 until in or around December 2015, Defendants paid Jaramillo $6.75 per hour for all hours worked, including those hours worked over forty (40) per week.

62.     From in or around January 2016 until in or around December 2016, Defendants paid Jaramillo $7.00 per hour for all hours worked, including those hours worked over forty (40) per week.

63.     From in or around January 2017 until in or around December 2017, Defendants paid Jaramillo $7.50 per hour for all hours worked, including those hours worked over forty (40) per week.

64.     From in or around January 2018 until in or around December 2018, Defendants paid Jaramillo $8.00 per hour for all hours worked, including those hours worked over forty (40) per week.

65.     From in or around January 2019 until in or around December 2019, Defendants paid Jaramillo $9.00 per hour for all hours worked, including those hours worked over forty (40) per week.

66.     From in or around January 2020 until on or around December 21, 2020, Defendants paid Jaramillo $9.50 per hour for all hours worked, including those hours worked over forty (40) per week.

<u>Fraudulent Filing of Information Returns</u>

67.     Throughout her employment, Defendants paid Jaramillo her wages partially by check and partially in cash.

68.     Defendants issued IRS W-2 Forms to Jaramillo for the tax years 2013 through 2020 that only reflected the wages Defendants paid to Jaramillo via check during each such year.

69.     As a result, the W-2 Forms that Defendants issued to Jaramillo for the tax years 2013 through 2020 did not reflect all wages that Defendants paid to Jaramillo during each such year.

70.     Upon information and belief, Defendants filed the W-2 Forms issued to Jaramillo for the tax years 2013 through 2020 with the IRS.

71.     Defendants willfully filed false information returns with the IRS as to Jaramillo's wages, in violation of 26 U.S.C. § 7434.

<u>Retaliation Against Jaramillo</u>

72.     In or around July 2021, Plaintiffs' attorneys sent a demand letter to Defendants outlining the FLSA and NYLL violations asserted in this Complaint.

73.     On or around August 9, 2021, Defendants sent a letter through their attorney, Christopher Ross Esq., alleging that Plaintiffs had stolen $5,000.00 from Defendants, and that Plaintiffs had orchestrated a Ponzi scheme while employed by Defendants.

74.     Soon thereafter, sometime between August 2021 and September of 2021, Doris unlawfully retaliated against Jaramillo by contacting Jaramillo's former employer, Max Ulloa ("Ulloa"), and falsely accusing Jaramillo of fraud, theft, and questioning her immigration status.

75.     Specifically, Doris alleged that Jaramillo was undocumented and that Jaramillo had stolen money and committed fraud while employed by Defendants.

76.     From in or around August 2021 to in or around September 2021, Doris repeatedly contacted Ulloa and continued to make the aforementioned allegations about Jaramillo, causing Ulloa to block Doris' phone number.

77.     From in or around August 2021 to in or around September 2021, Ulloa informed Jaramillo that Doris had contacted him and accused Jaramillo of being undocumented, stealing money, and committing fraud while employed by Defendants.

78.     From in or around August 2021 to in or around September of 2021, Doris also retaliated against Jaramillo by contacting approximately six (6) clients of  Corporate Defendants and alleging that Jaramillo committed fraud and stole money while employed by Defendants.

79.     From in or around August 2021 to in or around September of 2021, these six (6) clients informed Jaramillo about Doris' allegations against her.

80.     Defendants retaliated against Zambrano for attempting to assert her legal rights under the FLSA and NYLL.

<u>All Plaintiffs</u>

81.     At all relevant times, Plaintiffs and the FLSA Collective Plaintiffs were non-exempt employees pursuant to the FLSA and the NYLL, and were entitled to overtime compensation.

82.     Despite routinely working in excess of forty (40) hours per week, Plaintiffs and the FLSA Collective Plaintiffs were not paid overtime compensation of one and one-half (1.5) times their regular hourly rate or the applicable minimum wage rate, whichever is greater, for the hours they worked in excess of forty (40) per week.

83.     Furthermore, throughout their employment with Defendants, Plaintiffs were not paid at least the applicable New York State minimum wage rate for all hours worked.

84.     Plaintiffs also frequently worked shifts that spanned more than ten (10) hours per day, but were not paid spread of hours pay of one (1) additional hour's pay at the full minimum wage rate for every day in which their shifts exceeded ten (10) hours ("spread of hours pay").

85.     Defendants further failed to furnish to Plaintiffs a payroll notice at the time of their hire, or at any time thereafter, containing Plaintiffs' rates of pay, the designated payday, or other information required by NYLL § 195(1).

86.     Defendants also failed to furnish to Plaintiffs, with each wage payment, an accurate statement listing Plaintiffs' regular and overtime rates of pay and the number of regular and overtime hours worked, or any other information required by NYLL § 195(3).

87.     Defendants violated federal and state law by willfully failing to pay Plaintiffs and the FLSA Collective Plaintiffs overtime compensation; by failing to pay Plaintiffs the applicable minimum wages and spread of hours wages; by failing to timely pay Plaintiffs their full amount of wages every week; by failing to provide Plaintiffs with the required payroll notices and wage statements; by reporting fraudulent information to the IRS in violation of 26 U.S.C. § 7434; and by retaliating against Plaintiffs for exercising their legal rights under the FLSA and NYLL.

**<u>AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, INDIVIDUALLY, AND THE FLSA COLLECTIVE PLAINTIFFS</u>**
*(Overtime Violations under the FLSA)*

88.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, repeat and reallege all prior allegations set forth above.

89.     Pursuant to the applicable provisions of the FLSA, Plaintiffs and the FLSA Collective Plaintiffs were entitled to overtime compensation of one and one-half (1.5) times their regular hourly rate of pay or the applicable minimum wage rate, whichever is greater, for all hours worked in excess of forty (40) hours per week.

90.     Plaintiffs and the FLSA Collective Plaintiffs regularly worked in excess of forty (40) hours per week during their employment with Defendants.

91.     Throughout the relevant time period, Defendants knowingly failed to pay Plaintiffs and the FLSA Collective Plaintiffs overtime wages of one and one-half (1.5) times their regular rates of pay or the applicable minimum wage rate, whichever is greater, for each hour worked in excess of forty (40) hours per week.

92.     As a result of Defendants' violations of the law and failure to pay Plaintiffs and the FLSA Collective Plaintiffs the required overtime wages, Plaintiffs and the FLSA Collective Plaintiffs have been damaged and are entitled to recover from Defendants all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

93.     As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiffs and the FLSA Collective Plaintiffs are entitled to additional damages equal to one hundred percent (100%) of the total amount of wages due ("liquidated damages").

94.     Judgment should be entered in favor of Plaintiffs and the FLSA Collective Plaintiffs and against Defendants on the First Cause of Action in the amount of their respective unpaid overtime wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF PLAINTIFFS
*(Overtime Violations under the NYLL)*

95.     Plaintiffs repeat and reallege all prior allegations set forth above.

96.     Pursuant to the applicable provisions of the NYLL, Plaintiffs were entitled to overtime compensation of one and one-half (1.5) times their regular hourly rate of pay or the

applicable minimum wage, whichever is greater, for all hours worked in excess of forty (40) hours per week.

97.     Plaintiffs regularly worked in excess of forty (40) hours per week during their employment with Defendants.

98.     Throughout the relevant period, Defendants knowingly failed to pay Plaintiffs overtime wages of one and one-half (1.5) times their regular rate of pay or the applicable minimum wage, whichever is greater, for each hour worked in excess of forty (40) hours per week.

99.     As a result of Defendants' violations of the law and failure to pay Plaintiffs the required overtime wages, Plaintiffs have been damaged and are entitled to recover from Defendants all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

100.    As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiffs are entitled to liquidated damages.

101.    Judgment should be entered in favor of Plaintiffs and against Defendants on the Second Cause of Action in the amount of Plaintiffs' unpaid overtime wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF PLAINTIFFS
*(Minimum Wage Violations under the NYLL)*

102.    Plaintiffs repeat and reallege all prior allegations set forth above.

103.    Pursuant to the applicable provisions of the NYLL, Plaintiffs were entitled to receive at least the statutory minimum wage for all hours worked.

104.    Throughout the relevant period, Defendants knowingly failed to pay Plaintiffs at least the statutory minimum wages for all of the hours they worked.

105.     As a result of Defendants' violations of the law and failure to pay Plaintiffs the required minimum wages, Plaintiffs have been damaged and are entitled to recover from Defendants all unpaid minimum wages due, along with all reasonable attorneys' fees, interest, and costs.

106.     As Defendants did not have a good faith basis to believe that their failure to pay minimum wages was in compliance with the law, Plaintiffs are entitled to liquidated damages.

107.     Judgment should be entered in favor of Plaintiffs and against Defendants on the Third Cause of Action in the amount of Plaintiffs' unpaid minimum wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

## AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS
*(Spread of Hours Violations Under the NYLL)*

108.     Plaintiffs repeat and reallege all prior allegations set forth above.

109.     Plaintiffs regularly worked shifts that spanned more than ten (10) hours per day.

110.     Defendants willfully failed to pay Plaintiffs additional compensation of one (1) hour's pay at the basic minimum hourly wage rate for each day during which Plaintiffs' shifts spanned more than ten (10) hours.

111.     By failing to pay Plaintiffs spread of hours pay, Defendants willfully violated NYLL Article 19, §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations, including but not limited to, 12 N.Y.C.R.R. §§ 142-2.4.

112.     Judgment should be entered in favor of Plaintiffs and against Defendants on the Fourth Cause of Action in the amount of their unpaid spread of hours wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A FIFTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS**
*(Failure to Timely Pay Wages Under the NYLL)*

113.     Plaintiffs repeat and reallege all prior allegations set forth above.

114.     Pursuant to the provisions of NYLL § 191(1)(a)(i), Plaintiffs were entitled to be paid their earned wages weekly and not later than seven (7) calendar days after the end of the week in which the wages were earned.

115.     During the relevant period, Defendants routinely failed to pay Plaintiffs all of their earned wages in accordance with the agreed-upon terms of employment.

116.     During the relevant period, Defendants failed to timely pay Plaintiffs all of their earned wages on a weekly basis and not later than seven (7) calendar days after the end of the week in which the wages were earned.

117.     Throughout the relevant time period, Defendants failed to pay Plaintiffs all wages earned by Plaintiffs, including minimum wages, spread of hours pay, and overtime wages earned for all hours worked in excess of forty (40) hours per week, in violation of NYLL § 191(1)(a)(i).

118.     As a result of Defendants' violations of the law and failure to pay Plaintiffs in accordance with NYLL § 191(1)(a)(i), Plaintiffs have been damaged and are entitled to recover from Defendants all wages due, along with reasonable attorneys' fees, interest, and costs.

119.     Judgment should be entered in favor of Plaintiffs and against Defendants on the Fifth Cause of Action for all wages due, liquidated damages, all reasonable attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A SIXTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS**
*(Failure to Provide Payroll Notices Under the NYLL)*

120.     Plaintiffs repeat and reallege all prior allegations set forth above.

121.     Defendants failed to furnish to Plaintiffs, at the time of hire or at any time thereafter, notices containing the rate or rates of pay and basis thereof; allowances, if any claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer; the "doing business as" names used by the employer; the physical address of the employer's main or principal place of business, and a mailing address if different; the telephone number of the employer or any other information required by NYLL § 195(1).

122.     As Defendants failed to provide Plaintiffs with payroll notices as required by NYLL § 195(1), Plaintiffs are entitled to liquidated damages in the amount of $50.00 per day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorneys' fees and costs.

123.     Judgment should be entered in favor of Plaintiffs and against Defendants on the Sixth Cause of Action in the form of liquidated damages amounting to $50.00 per day in which the violation occurred, up to maximum of $5,000.00, along with all reasonable attorneys' fees and costs.

## AS AND FOR A SEVENTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS
### *(Failure to Provide Wage Statements Under the NYLL)*

124.     Plaintiffs repeat and reallege all prior allegations set forth above.

125.     Throughout the relevant period, Defendants failed to furnish to Plaintiffs, with each wage payment, a statement listing: the regular hourly rates of pay; overtime rates of pay; number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; and net wages; in violation of NYLL § 195(3).

126.     As Defendants failed to provide Plaintiffs with wage statements as required by NYLL § 195(3), Plaintiffs are entitled to liquidated damages in the amount of $250.00 per day for

every day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorneys' fees and costs.

127.    Judgment should be entered in favor of Plaintiffs and against Defendants on the Seventh Cause of Action in the form of liquidated damages amounting to $250.00 per day for every day in which the violation occurred, up to maximum of $5,000.00, along with all reasonable attorneys' fees and costs.

## AS AND FOR AN EIGHTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS
*(Retaliation under the FLSA)*

128.    Plaintiffs repeat and reallege all prior allegations.

129.    In or around July 2021, Plaintiffs' attorneys sent a demand letter to Defendants outlining the FLSA and NYLL violations asserted in this Complaint.

130.    On or around August 9, 2021, Defendants sent a letter through their attorney, Christopher Ross Esq., alleging that Plaintiffs had stolen $5,000.00 from Defendants, and that Plaintiffs had orchestrated a Ponzi scheme while employed by Defendants.

131.    In or around March 2022, Doris retaliated against Zambrano by repeatedly contacting Express Deli and making false allegations of theft and fraud against Zambrano.

132.    From in or around August 2021 to in or around September 2021, Doris also retaliated against Jaramillo by contacting several clients of Corporate Defendants and alleging that Jaramillo committed fraud and stole money while employed by Defendants; and by contacting Jaramillo's former employer, Ulloa, and accusing Jaramillo of theft, fraud, and being undocumented.

133.    Defendants' conduct against Plaintiffs constitutes unlawful retaliation in violation of 29 U.S.C. § 215(a)(3).

18

134.     As a result of Defendants' violations of the law, Plaintiffs have been damaged and are entitled to recover from Defendants emotional, compensatory, and punitive damages, if applicable, along with lost wages, front pay, liquidated damages, reasonable attorneys' fees, and costs.

135.     Judgment should be entered in favor of Plaintiffs and against Defendants on the Eighth Cause of Action for emotional, compensatory, and punitive damages, if applicable, lost wages, front pay, liquidated damages, reasonable attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A NINTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS
*(Retaliation under the NYLL)*

136.     Plaintiffs repeat and reallege all prior allegations.

137.     In or around July 2021, Plaintiffs' attorneys sent a demand letter to Defendants outlining the FLSA and NYLL violations asserted in this Complaint.

138.     On or around August 9, 2021, Defendants sent a letter through their attorney, Christopher Ross Esq., alleging that Plaintiffs had stolen $5,000.00 from Defendants, and that Plaintiffs had orchestrated a Ponzi scheme while employed by Defendants.

139.     In or around March 2022, Doris retaliated against Zambrano by repeatedly contacting Express Deli and making false allegations of theft and fraud against Zambrano.

140.     From in or around August 2021 to in or around September 2021, Doris also retaliated against Jaramillo by contacting several clients of Corporate Defendants and alleging that Jaramillo committed fraud and stole money while employed by Defendants; and by contacting Jaramillo's former employer, Ulloa, and accusing Jaramillo of theft, fraud, and being undocumented.

141.     Defendants' conduct constitutes unlawful retaliation in violation of NYLL § 215.

142.     As a result of Defendants' violations of the law, Plaintiffs have been damaged and are entitled to recover from Defendants emotional, compensatory, and punitive damages, if applicable, along with lost wages, front pay, liquidated damages, reasonable attorneys' fees, and costs.

143.     Judgment should be entered in favor of Plaintiffs and against Defendants on the Ninth Cause of Action for emotional, compensatory, and punitive damages, if applicable, lost wages, front pay, liquidated damages, reasonable attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A TENTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS
*(Fraudulent Filing of Information Returns Under 26 U.S.C. § 7434)*

144.     Plaintiffs repeat and reallege all prior allegations set forth above.

145.     Throughout the relevant period, Defendants regularly paid Plaintiffs part of their wage compensation by check with withholdings for federal, state, and local taxes, and part of their wage compensation in cash without any withholdings for federal, state, and local taxes.

146.     Defendants provided Plaintiffs with a copy of the IRS W-2 forms that Defendants filed with the IRS each calendar year, which reflected only Plaintiffs' wages that were paid by check.

147.     A Form W-2 is an information return as defined by 26 U.S.C. § 6724(d)(1).

148.     Defendants were aware of their duty to accurately report to the IRS all wages paid to Plaintiffs.

149.     Defendants were aware that the W-2 Forms did not reflect wages paid in cash to Plaintiffs.

150.     Defendants reported fraudulent information to the IRS in violation of 26 U.S.C. § 7434 by filing IRS W-2 forms with false information regarding the wages to Plaintiffs, thereby decreasing Defendants' tax liability.

151.     As Defendants willfully filed fraudulent information returns in violation of 26 U.S.C. § 7434, Plaintiffs are entitled to damages in an amount equal to the greater of $5,000.00 or the sum of any actual damages sustained by Plaintiffs for each fraudulent information return, costs of the action, and reasonable attorneys' fees.

152.     Judgment should be entered in favor of Plaintiffs and against Defendants on the Tenth Cause of Action in an amount equal to the greater of $5,000.00 or the sum of any actual damages sustained by Plaintiffs for each fraudulent information return, costs of the action, and reasonable attorneys' fees.

**WHEREFORE** Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, pray for relief as follows:

a) on the First Cause of Action on behalf of Plaintiffs and the FLSA Collective Plaintiffs for all overtime wages due to Plaintiffs and the FLSA Collective Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

b) on the Second Cause of Action for all overtime wages due to Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

c) on the Third Cause of Action for all minimum wages due to Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

d) on the Fourth Cause of Action for all spread of hours wages due to Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

e) on the Fifth Cause of Action for all wages due Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

f) on the Sixth Cause of Action for liquidated damages in the amount of $50.00 per day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorney fees in an amount to be determined by this Court;

g) on the Seventh Cause of Action for liquidated damages in the amount of $250.00 per day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorney's fees in an amount to be determined by this Court;

h) on the Eighth Cause of Action for all emotional, compensatory, and punitive damages, if applicable, along with all lost wages and front pay, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

i) on the Ninth Cause of Action for all emotional, compensatory, and punitive damages, if applicable, along with all lost wages and front pay, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

j) on the Tenth Cause of Action for damages in the amount equal to the greater of $5,000.00 for each fraudulent information return or the sum of any actual damages sustained by Plaintiffs, and attorneys' fees in an amount to be determined by this Court;

k) interest;

l) costs and disbursements; and

m) such other and further relief as is just and proper.

Dated: New York, New York
       May 23, 2022

                                          */s/ Eliseo Cabrera*
                                          Eliseo Cabrera
                                          KATZ MELINGER PLLC
                                          370 Lexington Ave., Suite 1512
                                          New York, New York 10017
                                          Telephone: (212) 460-0047
                                          Facsimile: (212) 428-6811
                                          edcabrera@katzmelinger.com
                                          *Attorneys for Plaintiffs*