UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
MARIA ZAMBRANO and YISELA JARAMILLO,
individually and on behalf of all others similarly
situated,

      Plaintiffs,

      **MEMORANDUM AND ORDER**

 - against-       22-CV-03031 (OEM) (SIL)

ENVIOS ESPINOZA, INC.; ENVIOS ESPINOZA
TELEFONICA MULTISERVICES CORP. D/B/A
ENVIOS ESPINOZA; JOHN DOE CORPORATION #1
D/B/A ENVIOS ESPINOZA ENTERPRISES; JOHN DOE
CORPORATION #2 D/B/A ENVIOS ESPINOZA & CO.,
JULIO ESPINOZA, FAUSTO CANDO, and DORIS
CANDO,

      Defendants.
----------------------------------------------------------------------x

ORELIA E. MERCHANT, United States District Judge:

  Plaintiffs Maria Zambrano ("Zambrano") and Yisela Jaramillo ("Jaramillo") (together, "Plaintiffs") commenced this fair labor law action individually, and purportedly on behalf of others similarly situated, against Defendants Envios Espinoza, Inc., Envios Espinoza Telefonica Multiservices Corp. d/b/a Envios Espinoza ("Telefonica"), John Doe Corporation #1 d/b/a Envios Espinoza Enterprises ("Corporation #1"), John Doe Corporation #2 d/b/a Envios Espinoza & Co., ("Corporation #2"), Julio Espinoza, Fausto Cando, and Doris Cando (together "Defendants").  *See* Amended Complaint ("Am. Compl."), ECF 51, at 1.  Specifically, Plaintiffs assert the following causes of action: (1) overtime violations under the Fair Labor Standards Act ("FLSA"); (2) overtime violations under the New York Labor Law ("NYLL"); (3) minimum wage violations under the NYLL; (4) spread of hours violations under the NYLL; (5) failure to provide payroll notices under the NYLL; (6) failure to provide wage statements under the NYLL; (7) retaliation

under the FLSA; (8) retaliation under the NYLL; and (9) fraudulent filing of information returns under the Internal Revenue Code ("IRC"), 26 U.S.C. § 7434. *Id.* Plaintiffs seek unpaid overtime wages, minimum wages, spread of hours wages, liquidated, emotional, compensatory, and punitive damages, and damages provided under 26 U.S.C. § 7434. *Id.*

Before the Court is Plaintiffs' motion for partial summary judgment on their first through sixth causes of action.[1] For the following reasons, Plaintiffs' motion is granted in part and denied in part.

## BACKGROUND[2]

### A.    The Parties

Defendants Envios Espinoza, Inc., Telefonica, Corporation #1, and Corporation #2 ("Envios Enterprises") provide money transfer, package mailing, and bill pay services. Pls.' Reply 56.1 at 3.[3] Defendants Fausto Cando and Doris Cando are each a general partner and 50% owner of Envios Enterprises. *Id.* at 2. Plaintiffs Zambrano and Jaramillo were Defendants' former

---

[1] *See* Notice of Motion, ECF 79; Plaintiffs' 56.1 Statement of Material Facts ("Pls.' 56.1"), ECF 80; Defendants' 56.1 Counterstatement of Material Facts ("Defs.' Counter 56.1"), ECF 86; Plaintiffs' Reply 56.1 Statement of Material Facts ("Pls.' Reply 56.1"), ECF 88-1; Plaintiffs' Memorandum of Law in Support of Motion for Partial Summary Judgment ("Pls.' Mem."), ECF 84; Plaintiffs' Reply Memorandum of Law in Support of Motion for Partial Summary Judgment ("Pls.' Reply"), ECF 87; Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion ("Defs.' Opp."), ECF 90.

[2] The following facts are taken from Plaintiffs' 56.1 Statement, Defendants' 56.1 Counterstatement, Plaintiffs' Reply 56.1 Statement, and the unverified Amended Complaint. *See* Pls.' 56.1; Defs.' Counter 56.1; Pls.' Reply 56.1. These facts are undisputed unless otherwise noted. Rule 56.1 of the Local Rules for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party opposing summary judgment to respond point-by-point to a movant's 56.1 Statement. The opposing party, Defendants here, failed to "specifically deny or controvert a correspondingly numbered paragraph" in the moving party's, Plaintiffs', 56.1 Statement, therefore, Plaintiffs' 56.1 Statement will generally be accepted as undisputed for purposes of this motion. *See infra* Section B. EDNY Local Rules and The Court's Individual Practices & Rules. The Amended Complaint is unverified and therefore cannot be considered as evidence at summary judgment, but the Court includes facts from the amended complaint to provide relevant context. *See Continental Ins. Co. v. Atlantic Cas. Ins. Co.*, 07-CV-3635, 2009 WL 1564144, at *1 n.1 (S.D.N.Y. June 4, 2009) (finding that on a motion for summary judgment "allegations in an unverified complaint cannot be considered as evidence.") (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

[3] The Court refers to page numbers, rather than paragraph numbers, when citing to Plaintiffs' Reply 56.1 Statement because the paragraph numbers are duplicative throughout.

employees.  *See id.* at 4.  Fausto Cando and Doris Cando hired Plaintiffs, determined Plaintiffs'

weekly schedules, determined Plaintiffs' wages, and paid Plaintiffs.  Pls.' 56.1 ¶ 8.

**B.    Nature of Envios Enterprises' Business**

Envios Enterprises has several locations, all of which "were open Mondays through

Saturdays from 9:00 a.m. until 8:00 p.m., and Sundays from 9:00 a.m. until 7:00 p.m." except

when closed during certain holidays, because of weather, and for 30 minutes during lunchtime.

Pls.' Reply 56.1 at 3-4.  The business was also closed for three weeks "during the 2020 COVID

pandemic."  *Id.*  at 4.

At any given time, from 2016 to 2021, Envios Enterprises employed four to seven

employees, Pls.' 56.1 ¶¶ 23-28, in addition to Defendants Fausto Cando and Doris Cando,  *id.* ¶ 9.

In total, from 2016 to 2021, six to nine people worked for Envios Enterprises.  Pls.' Reply 56.1 at

5-6.  Fausto Cando worked at various Envios Enterprises locations at least seven hours per day,

five days a week, and five hours per day, two days a week.  Pls.' 56.1 ¶ 10.  Plaintiffs do not clarify

what Doris Cando's hours were or how frequently she worked, but Plaintiffs assert that on any

given day that Fausto Cando worked, Doris Cando worked at a different location than Fausto

Cando.  *Id.* ¶¶ 9,11.  At least one employee worked at each Envios Enterprises location at any

given time.  Pls.' Reply 56.1 at 4.  Because Fausto Cando and Doris Cando each worked at different

locations, at least two of the four Envios Enterprises locations were staffed by an employee.  Pls.'

56.1 ¶ 11.

Plaintiffs assert that Defendants employed Zambrano from October 2006 to on or around

March 29, 2021.  *Id.* ¶ 29.  Plaintiffs assert that Defendants employed Jaramillo from in or around

November 2013 until on or around December 21, 2020.  *Id.* ¶ 39.  Both Plaintiffs worked as a

"teller/cashier."  *Id.* ¶¶ 30, 40.  Plaintiffs' specific job duties included "customer service, entering

transactions into the computer, [making] certain phone calls, and answering questions from customers, performing money drops . . . and collecting receipts from the armored car company upon pickup of money." Pls.' Reply 56.1 at 7, 9.

## C.    Plaintiffs' Hours

During her employment at Envios Enterprises, Plaintiff Zambrano regularly worked five days per week: Mondays, and Wednesdays through Saturdays, from approximately 9:00 a.m. to between 8:30 p.m. and 9:00 p.m. Pls.' 56.1 ¶ 33.

From around November 2013, until around April 2020, Plaintiff Jaramillo worked four days per week from approximately 9:00 a.m. to approximately 9:00 p.m. *Id.* ¶ 44. Jaramillo's working days were "varied." *Id.* From around April 2020 until around December 21, 2020, Plaintiff Jaramillo worked four days per week from approximately 9:00 a.m. to approximately 8:30 p.m. *Id.* ¶ 45. Jaramillo's working days during this period were also "varied." *Id.*

## D.    Plaintiffs' Salaries

From around January 2011 until around December 2019, Defendants paid Plaintiff Zambrano an hourly wage of $9.00. *Id.* ¶ 34. Beginning around January 2020, and lasting until around March 29, 2021, Defendants paid Plaintiff Zambrano an hourly wage of $10.00. *Id.* ¶ 35. From around January 2016 until around December 2016 Defendants paid Plaintiff Jaramillo an hourly wage of $7.00. *Id.* at ¶ 46. Defendants paid Jaramillo an hourly wage of $7.50, $8.00, $9.00 around January to December of each calendar year 2017, 2018 and 2019 respectively. *Id.* ¶¶ 47-49. From around January 2020 until around December 21, 2020, Defendants paid Jaramillo an hourly wage of $9.50 per hour. *Id.* ¶ 50.

For each wage rate Defendants paid Plaintiffs Zambrano and Jaramillo in each period, the same rate applied to all hours worked including those hours worked over 40 per week. *Id.* ¶¶ 34-

35, 46-50.  That is, Defendants did not pay Plaintiffs a higher hourly wage for hours worked over forty per week.  *Id.*

### E.     Defendants' Business Practices

Plaintiffs assert that Defendants paid them by check and in cash.  *Id.* ¶¶ 36, 51.  Defendants did not provide Plaintiffs with a notice listing their rate of pay and the basis thereof when Plaintiffs were first employed or when Plaintiffs received raises.  *Id.* ¶¶ 37, 52.  Defendants also did not provide wage statements or pay stubs when they paid Plaintiffs, *id.* ¶¶ 38, 53, nor did Defendants keep records of Plaintiffs' hours or require Plaintiffs to sign in and out, *id.* ¶ 13.  Finally, Defendants do not recall Plaintiffs' schedules.  *Id.* ¶ 14.

## PROCEDURAL HISTORY

On May 23, 2022, Plaintiffs filed a complaint against Defendants.  *See* Complaint, ECF 1.  Between May 2022 and March 2024, the parties exchanged discovery and attended conferences before Magistrate Judge Locke to resolve proposed class certification issues.  *See generally* Docket Sheet.  On March 13, 2024, Plaintiffs filed an Amended Complaint.  *See* Am. Compl.  On March 24, 2024, Defendants Fausto and Doris Cando answered Plaintiffs' Amended Complaint.  *See* Answer to Amended Complaint, ECF 61.

Plaintiffs' fully-briefed motion for partial summary judgment on six of the nine causes of action was filed on December 23, 2024.  *See* Notice of Motion; Pls.' 56.1; Defs.' Counter 56.1; Pls.' Reply 56.1; Pls.' Mem.; Defs.' Opp.; Pls.' Reply.

## LEGAL STANDARDS

### A.     Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Rule 56(c) requires parties to follow specific procedures when addressing factual issues during summary

judgment briefing.  Specifically, to demonstrate that "a fact cannot be or is genuinely disputed," parties must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1)(A)-(B).  Rule 56(c) provides that a court may not grant a motion for summary judgment unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006) (citing FED. R. CIV. P. 56(c)).

The moving party bears the burden of showing it is entitled to summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "The inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion."  *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam), and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)).  The Court "is not to weigh the evidence but is instead required . . . to eschew credibility assessments."  *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004).  Therefore, "if 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'"  *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d

Cir. 2007) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997)) (alteration in original).

If the moving party meets their burden of demonstrating the absence of a disputed issue of material fact *and* that they are entitled to judgment as a matter of law, then the burden shifts to the nonmoving party to present "specific facts showing a genuine issue for trial."  FED. R. CIV. P. 56(e); *Sheet Metal Workers' Nat'l Pension Fund v. Accra Sheetmetal, LLC*, 993 F. Supp. 2d 245, 248 (E.D.N.Y. 2014); *Anderson*, 477 U.S. at 248 (the party opposing the motion "may not rest upon the mere allegations or denials in his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial.").  The nonmoving party cannot rely solely on "conclusory allegations or unsubstantiated speculation" to defeat a motion for summary judgment.  *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).  If the evidence favoring the nonmoving party is "merely colorable . . . or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

Under Rule 56(c)(3), the Court may also look to other materials in the record in its review. *See* FED. R. CIV. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); FED. R. CIV. P. 56(C) Advisory Committee's Note to 2010 amendment ("[A] court may consider record materials not called to its attention by the parties.").

**B.    Local Rules and the Court's Individual Practices & Rules**

Local Rule 56.1 requires a party opposing a motion for summary judgment to "include a correspondingly numbered paragraph admitting or denying, and otherwise responding to, each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  Local Rule 56.1(b).  "Each numbered

paragraph in the statement of material facts set forth in the statement required to be served by the moving party *will be deemed to be admitted* for purposes of the motion *unless specifically denied and controverted by a correspondingly numbered paragraph* in the statement required to be served by the opposing party."  Local Rule 56.1(c) (emphasis added).

Furthermore, this Court's Individual Practices & Rules require a party's 56.1 Counterstatement to "quote, verbatim, the 56.1 Statement, including all citations, and respond to the moving party's statements of fact immediately beneath each statement."  Individual Practices & Rules, Section III, Part C(3).  Under these rules, "Any evidence cited in a party's 56.1 Statement, Counter Statement, or Reply Statement must be attached as an exhibit to a declaration and filed along with a party's 56.1 Statement."  *Id.* at Part C(6).  Finally, the rules provide that "material facts in any . . . memorandum of law in connection with a motion for summary judgment must cite to relevant paragraphs of 56.1 Statements."  *Id.* at Part C(8).

## DISCUSSION

### A.  Defendants Fausto and Doris Cando's Deficient 56.1 Counterstatement

In support of their motion for partial summary judgment, Plaintiffs Zambrano and Jaramillo filed a 56.1 Statement that asserted 53 undisputed material facts, each supported by a citation to the record, in compliance with Rule 56(c), the Local Rules, and this Court's Individual Practices & Rules.  *See* Pls.' 56.1.

Defendants Fausto and Doris Cando, who are represented by counsel, filed a 56.1 Counterstatement in support of their opposition to Plaintiffs' motion for partial summary judgment that does not comply with Rule 56, the Local Rules, or this Court's Individual Practices & Rules. *See* Defs.' Counter 56.1.  Defendants' 56.1 Counterstatement does not quote verbatim Plaintiffs' 56.1 Statement and does not respond to Plaintiffs' statements of fact immediately beneath each

statement.  *See id.*; Pls.' 56.1.   Defendants' 56.1 Counterstatement also does not list "correspondingly numbered paragraph[s] admitting or denying, and otherwise responding to, each numbered paragraph in the statement of the moving party," as required by Local Rule 56.1(b).  *See* Defs.' Counter 56.1.   For example, while Plaintiffs' 56.1 Statement contained 53 numbered statements, Defendants' 56.1 Counterstatement only contained 35.  *See id.*; Pls.' 56.1.  Even where Defendants' 56.1 Counterstatement appeared to address the same underlying facts as Plaintiffs' 56.1 Statement, Defendants did not use "correspondingly numbered paragraphs."   Local Rule 56.1(b).  For example, Plaintiffs' 56.1 Statement at paragraph 24 asserts that "[i]n the year 2016, Defendants employed five (5) employees, not including Fausto Cando and Doris Cando[,]" Pls.' 56.1 ¶ 24, but Defendants' 56.1 Counterstatement appears to respond to that statement at paragraph 13 where it asserts that "[t]he years [sic] 2016 the Defendant had 7 employees[,]" Defs.' Counter 56.1 ¶ 13.  Even so, paragraph 13 in Defendants' 56.1 Counterstatement does not contain any language that it is "admitting or denying, or responding to" paragraph 24 in Plaintiffs' 56.1 Statement; it simply states Defendants' own count of employees in 2016.  Defs.' Counter 56.1 ¶ 13; Pls.' 56.1 ¶ 24.  Without corresponding numbers or an on-point response, one would need to infer that paragraph 13 addresses the same fact as paragraph 24.  However, the Court declines to attempt to wade through Defendants' 56.1 Counterstatement to speculate about which statement corresponds to which statement in Plaintiff's 56.1.

Despite the deficiencies in Defendants' 56.1 Counterstatement, Plaintiffs submitted a Reply 56.1 with numbered paragraphs corresponding to Defendants' 56.1 Counterstatement, with each statement admitting, denying or otherwise responding to Defendants' 56.1 Counterstatement.

*See id.*  Plaintiffs' Reply 56.1 Statement correctly noted that Defendants' 56.1 Counterstatement did not comply with this Court's Individual Practices & Rules.  Pls.' Reply 56.1.

Rule 56(e) provides that:

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
(1) give an opportunity to properly support or address the fact;
(2) consider the fact undisputed for purposes of the motion;
(3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or
(4) issue any other appropriate order.

FED. R. CIV. P. 56(e)(1)-(4).  Therefore, per Federal Rule of Civil Procedure 56(e)(2), the procedural posture of this case, and the fact that Fausto and Doris Cando are represented by counsel, the Court deems the facts asserted in Plaintiffs' 56.1 Statement, as generally undisputed for purposes of this motion.

Although Plaintiffs' 56.1 Statement is generally treated as undisputed, the Court must nonetheless examine Plaintiffs' 56.1 Statement to determine whether Plaintiffs have met their burden of demonstrating that no material issue of fact remains for trial.  When determining whether the moving party has satisfied this burden, the Court "may not rely solely on the statement of undisputed facts contained in the moving party' s Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion."  *Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003).

**B.     FLSA Overtime Violation (Claim One)**

Plaintiffs seek summary judgment on their FLSA overtime violation claim.[4]  *See* Pls.' Mem. at 10.  The FLSA requires employers to pay overtime to employees who work over 40 hours

[4] Plaintiffs' Amended Complaint also asserts an FLSA retaliation claim but Plaintiffs do not move for summary judgment on that claim.  *See* Am. Compl.; Notice of Motion.  However, the Court notes that unlike the FLSA overtime wage violation claim, which clearly requires the employer to fall under "enterprise" or "individual coverage," *Locke v. St. Augustine's Episcopal Church*, 690 F. Supp. 2d 77, 84 (E.D.N.Y. 2010), the Second Circuit has not determined

a week. 29 U.S.C. §§ 206(a)(1), 207(a).  An employer is subject to the FLSA's overtime provision if (1) its employees are "engaged in commerce," or (2) the employer is an "enterprise engaged in commerce."  29 U.S.C. §§ 206, 207(a)(1); *see also Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007), *aff'd*, 577 F.3d 93 (2d Cir. 2009).  These "categories are commonly referred to as 'enterprise' and 'individual' coverage, respectively."  *Locke*, 690 F. Supp. 2d at 84 (citing *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 n.8 (1985); *Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 96 (2d Cir. 2009)).

For Plaintiffs to prevail on summary judgment, they must establish that the parties are covered by the FLSA and that Defendants failed to properly pay them overtime wages.  Plaintiffs bear the burden of establishing that Defendants are subject to the FLSA under either form of coverage.  *See, e.g.*, *Yahui Zhang v. Akami*, 15-CV-4946 (VSB), 2019 WL 4688702, at *3 (S.D.N.Y. Sept. 25, 2019) ("Plaintiff bears the burden of establishing coverage under the FLSA."); *Garcia-Devargas v. Maino*, 15-CV-2285 (GBD) (JLC), 2017 WL 129123, at *3 (S.D.N.Y. Jan. 13, 2017), *report and recommendation adopted*, 2017 WL 11567211 (S.D.N.Y. Mar. 29, 2017) (explaining that "[f]or [p]laintiffs to prevail on summary judgment, they must establish both that the parties are covered by the FLSA and NYLL, and that Defendants failed to properly pay them overtime wages."); *cf. Nepomuceno v. Amsterdam Deli & Convenience Corp.*, 19-CV-3150 (MKV), 2022 WL 4448552, at *5 (S.D.N.Y. Sept. 23, 2022) (granting summary judgment on plaintiff's FLSA overtime claim after finding that "[p]laintiff has met his burden to demonstrate that there is no dispute of material fact with respect to either test of enterprise coverage."); *Yanes v. Juan & Jon Inc.*, 19-CV-0201 (JS) (LGD), 2024 WL 1072034, at *4 (E.D.N.Y. Mar. 11, 2024)

---

whether the same requirement extends to an FLSA retaliation claim.  *See Savor Health, LLC v. Day*, 19-CV-9798 (RA), 2022 WL 912236, at *(S.D.N.Y. Mar. 29, 2022).  District courts in this Circuit are split on this issue.  *See id.* (collecting cases).

(denying plaintiff's motion for summary judgment on her FLSA overtime claim because "[p]laintiff ha[d] not met her burden in establishing [d]efendants [we]re employers subject to the provisions of the FLSA.").

### 1. Enterprise Coverage

A business is subject to the FLSA under enterprise coverage if its employees are "employed by an enterprise engaged in commerce or in the production of goods for commerce." *Locke*, 690 F. Supp. 2d at 84. An enterprise is "engaged in commerce or in the production of goods for commerce" if it "(i) has employees engaged in commerce or in the production of goods for commerce, *or* . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; *and* (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 . . . ." 29 U.S.C. § 203(s)(1) (emphases added).

Plaintiffs have not met their burden of establishing that Defendants are subject to the FLSA under enterprise coverage. Plaintiffs' 56.1 Statement does not assert facts establishing whether Plaintiffs or any other employees were "engaged in commerce," or whether Defendants' annual gross revenues exceeded $500,000. *See* Pls.' 56.1; Pls.' Mem. Plaintiffs do not argue, *see* Pls.' Mem., and the Court does not independently find, that Defendants are subject to the FLSA under enterprise coverage. Therefore, the Court concludes that Plaintiffs have not established that Defendants are subject to enterprise coverage. *Yanes*, 2024 WL 1072034 at *4 (finding that "a single paragraph" arguing that "[d]efendants' business used goods and materials that had moved in interstate commerce[,]" combined with the lack of record evidence that the defendants' gross annual sales exceeded $500,000, was insufficient to establish enterprise coverage.).

## 2. Individual Coverage

Individual coverage is an alternative means by which Plaintiffs could establish that Defendants are subject to the FLSA.

Individual coverage applies when an employee is "engaged in the production of goods for commerce," by (i) "handl[ing] or otherwise work[ing] on goods intended for shipment out of the State, directly or indirectly" or (ii) is otherwise "engaged in commerce," when "perform[ing] work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among the several States or between any State and any place outside thereof." 29 C.F.R. §§ 779.103, 779.104. To determine if a plaintiff was otherwise "engaged in commerce," courts look "to whether the plaintiff was an employee in the 'channels of interstate commerce' as distinguished from [one] who merely affected that commerce." *Wood v. Mike Bloomberg 2020, Inc.*, 20-CV-2489 (LTS) (GWG), 2025 WL 1002058, at *9 (S.D.N.Y. Mar. 31, 2025) (citing *Gonzalez v. Victoria G's Pizzeria LLC*, 19-CV-6996 (DLI) (RER), 2021 WL 6065744, at *6 (E.D.N.Y. Dec. 22, 2021) (citation omitted), *report and recommendation adopted*, 2022 WL 842666 (E.D.N.Y. Mar. 22, 2022)).

To be engaged in commerce, the employee's work must be "in the channels" of interstate commerce or "in activities so closely related to this commerce, as to be considered a part of it[.]" *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d at 354 (quoting 29 C.F.R. § 779.103). "Activities that simply 'affect or indirectly relate to interstate commerce' are insufficient." *Id.* (quoting *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943)). For example, "handlers of goods for a wholesaler who moves them interstate on order or to meet the needs of specified customers are [engaged] in commerce, while [] employees who handle goods after acquisition by a merchant for general local disposition are not." *Thompson v. Hyun Suk Park*, 18-CV-6 (AMD) (ST), 2019 WL 1299194, at

13

*5 (E.D.N.Y. Mar. 5, 2019) (quoting *McLeod*, 319 U.S. at 494).  In short, activities that "merely affect commerce[,]" *Wood*, 2025 WL 1002058, at *9, do not constitute engagement in commerce.  Here, Plaintiffs do not argue, and the record does not suggest, that they are employees in the "production of goods for interstate commerce[,]" 29 C.F.R. § 779.103.  *See generally* Pls.' Mem.; Pls.' 56.1.

Therefore, for Plaintiffs to establish that they are individually covered by the FLSA, they must demonstrate that they were "personally engaged in interstate commerce." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 120 (E.D.N.Y. 2011); *see Jian Long Li v. Li Qin Zhao*, 35 F. Supp. 3d 300, 308 (E.D.N.Y. 2014) (analyzing whether individual coverage applies based on an employee's engagement in commerce rather than the employee's production of goods for commerce, because the latter was indisputably inapplicable).  To do so, Plaintiffs must show that their work is "so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Wood*, 2025 WL 1002058, at *9 (citing *Marcus v. Lominy*, 18-CV-1857 (NR), 2022 WL 493688, at *16 (S.D.N.Y. Feb. 17, 2022)) (cleaned up).  Activities that simply "affect or indirectly relate to interstate commerce" are insufficient to establish coverage. *McLeod*, 319 U.S. at 497.  "'As a basic rule, if the plaintiff did not have any contact with out-of-state customers or businesses, he cannot be individually covered under the FLSA.'" *Jian Long Li*, 35 F. Supp. 3d at 308 (internal quotation marks and citations omitted); *see Marcus v. Lominy*, 2022 WL 493688, at *15 (S.D.N.Y. Feb. 16, 2022) (internal quotation marks and citations omitted) (explaining that "bare assertions" that employees "ordered materials manufactured outside of New York, interacted with businesses outside of New York (including banks), and dealt with out-of-state insurance vendors . . . provided no information about the frequency of those contacts, and therefore [could not] support an assertion

that a substantial part of [their] work closely relate[d] to interstate commerce."); *see also Owusu v. Corona Tire Shop, Inc.*, 09-CV-3744 (NGG) (JO), 2013 WL 1680861, at *4 (E.D.N.Y. Apr. 15, 2013) (rejecting individual coverage based on the infrequent use of a credit card machine).

Plaintiffs point to no evidence in the record establishing that their work for Defendants was in the channels of interstate commerce. Nor do Plaintiffs attempt to argue that their work qualifies as work in the channels of interstate commerce. Moreover, the Court's independent review of the record reveals no evidence or any relevant stipulation of fact establishing that Plaintiffs' work qualifies as work in the channels of interstate commerce.

Plaintiffs' 56.1 Statement states that Defendants are "a business providing various services to customers, such as transferring money and mailing packages." Pls.' 56.1 ¶ 1. Plaintiffs' 56.1 statement describes Plaintiffs' job duties as:

> . . . collecting money from customers, entering transactions into the computer to transmit customers' money, answering phone calls, answering questions from customers, following up on the service provided to customers, performing money drops in a smart safe, providing serial numbers to the armored car company when dropping off money, and collecting receipts from the armored car company upon pick-up of the money.

*Id.* ¶¶ 31, 41. Plaintiffs simply describe activities such as "collecting money from customers" or "performing money drops in a smart safe" without specifying whether they occur interstate or intrastate and without noting their frequency. *Id.* These statements fail to show that a "substantial part" of Plaintiffs' work is "engagement in commerce." *See Marcus*, 2022 WL 493688, at *15. Without additional evidence about frequency and regularity, the Court cannot conclude that engagement in commerce is a "substantial part" of Plaintiffs' work. *See id.*; *Boekemeier v. Fourth Universalist Soc'y in City of New York*, 86 F. Supp. 2d 280, 287 (S.D.N.Y 2000). Because Plaintiffs do not even assert that their job activities "affect or indirectly relate to interstate commerce," *Ethelberth*, 91 F. Supp.

15

3d at 354 (citation omitted), the Court need not consider whether the activities "merely affect interstate commerce" or are "so closely related to this commerce, as to be considered a part of it[.]" *Id.* (quoting 29 C.F.R. § 779.103); *cf. Marcus*, 2022 WL 493688, at *15 (recognizing that the employee made "bare assertions" about certain interstate "contacts," but "regularly work[ing] with goods that originated from outside of New York does not qualify him as an employee engaged in commerce.").

District courts in this Circuit deny motions for summary judgment on FLSA overtime violation claims after finding that Plaintiffs failed to establish FLSA coverage. *E.g.*, *Garcia-Devargas v. Maino*, 2017 WL 129123, at *5. ("Plaintiffs' failure to articulate any argument regarding the parties' coverage under the FLSA or NYLL warrants the denial of their motion as to that element of their claim for overtime liability."). Here, as in *Garcia-Devargas*, Plaintiffs have not argued or cited to any evidence that either they, as "employees", or Defendants, as "employers", are covered by the FLSA and thus should prevail at summary judgment. *Id.* at *4.

Because Plaintiffs have not carried their initial burden of showing that Defendants are subject to the FLSA's overtime wage provisions under either enterprise coverage or individual coverage, Plaintiffs' motion for summary judgment as to their FLSA overtime claim is denied.

## C. NYLL Claims

Plaintiffs also move for summary judgment on their NYLL overtime, minimum wage, and spread of hours claims.

### 1. Plaintiffs are Covered under the NYLL

Like the FLSA, the NYLL contains a "coverage" requirement. However, "Plaintiffs' burden is less under the NYLL, where a plaintiff must only show that [s]he was an employee and that the defendant was h[er] employer." *Garcia-Devargas*, 2017 WL 11567211, at *1 (citation

16

omitted).  "Coverage under the NYLL substantively mirrors that under the FLSA, except that the NYLL does not have minimum amount of sales or nexus to interstate commerce requirements." *Lopez v. MNAF Pizzeria, Inc.*, 2021 WL 1164336, at *5 (S.D.N.Y. Mar. 25, 2021). (citation omitted).  The NYLL defines an "employee" as "any individual employed or permitted to work by an employer in any occupation" subject to certain exceptions.  N.Y. Lab. Law § 651(5).  "The NYLL's definition of an employer is broader than that contained in the FLSA, reaching 'any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer.'"  *Ethelberth*, 91 F. Supp. 3d at 360 (quoting N.Y. Lab. Law § 650; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2).

Plaintiffs have established that they are covered under the NYLL by asserting that Plaintiff Zambrano was "employed by Defendants from October 2006 to on or around March 29, 2021[,]" Pls.' 56.1 ¶ 29,  that Plaintiff Jaramillo was employed by Defendants from in or around November 2013 until on or around December 21, 2020,  *id.* ¶ 39, and that both Plaintiffs worked for Defendants as a "teller/cashier."  *Id.* ¶¶ 30, 40.  Defendants do not dispute that they employed Plaintiffs.  *See* Defs.' Counter 56.1; Defs.' Mem.  Therefore, the Court finds that Plaintiffs have demonstrated that they were employees and Defendants were their employers under the NYLL.

## 2.    NYLL Minimum Wage (Claim Three) and Overtime Violation (Claim Two)

Plaintiffs assert NYLL minimum wage and overtime violation claims.  *See* Am. Compl. ¶¶ 108, 115.  The NYLL "requires that employees be paid 'for overtime at a wage rate of one and one-half times the employee's regular rate.'"  *Yol Kim*, 2024 WL 734130, at *8 (quoting N.Y. Comp. Codes R. & Regs. tit. 12 § 142-3.2.).  The NYLL also requires that an employer "pay not less than a statutorily-set minimum wage for each hour of work."  *Javier v. Bay Ride Hosp., LLC*, 18-CV-4395 (ARR) (ST), 2019 WL 13188857, at *5 (E.D.N.Y. Nov. 18, 2019) (citing N.Y. Lab.

LAW § 652 and N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.2).  During the relevant years, the applicable minimum hourly wage was $9.00 in 2016, $10.00 in 2017, $11.00 in 2018, $12.00 in 2019, $13.00 in 2020, and $14.00 in 2021.  N.Y. LAB. LAW § 652.

### a.  Establishing Liability

To establish liability on a minimum wage or overtime claim under the NYLL, "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work."  *Cardenas v. Edita's Bar & Rest., Inc.*, 17-CV-5150 (RPK) (RML), 2021 WL 4480570, at *5 (E.D.N.Y. Sept. 30, 2021) (citing *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 497 (S.D.N.Y. 2017) (citation omitted), *aff'd*, 752 F. App'x 33 (2d Cir. 2018) (summary order)).  The standard for establishing liability on a minimum wage violation claim is the same under the FLSA and NYLL.  *See Nakahata v. N.Y.-Presbyterian Healthcare Sys.*, 723 F.3d 192, 200 (2d Cir. 2013) (stating that the NYLL adopts the same "standard" of overtime pay as the FLSA); *Villada v. Diner*, 22-CV-2782 (KAM) (RML), 2024 WL 3875778, at *6 (E.D.N.Y. Aug. 19, 2024) (citing *Nakahata* and analyzing the employer's liability under both the NYLL and the FLSA); *Asencio v. Iris Spa in N. Castle Corp.*, 21-CV-06608 (NSR), 2025 WL 642250, at *2 (S.D.N.Y. Feb. 27, 2025) (applying the same test to FLSA and NYLL overtime and minimum wage claims, and stating "[a]n employee who brings an action under the FLSA or the NYLL for unpaid wages must prove that he or she performed work that was not compensated properly.").

The requirements for establishing liability—proving improper compensation and the employer's knowledge—apply to both the overtime and minimum wage claims provisions.  *See id.*; *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011) (applying this test to an FLSA

overtime claim); *Chichinadze v. BG Bar Inc.*, 517 F. Supp. 3d 240, 252 (S.D.N.Y. 2021) (applying the same test and *Kuebel*'s language to FLSA and NYLL minimum wage claims).

### b.  Knowledge of Improper Compensation

"Whether an employer had actual or constructive knowledge of an employee's unpaid work is a question of fact." *Vasquez v. NS Luxury Limousine Serv.*, 18-CV-10219 (AJN), 2021 WL 1226567, at *12 (S.D.N.Y. Mar. 31, 2021).

Here, Plaintiffs have established Defendants' knowledge.  There is no dispute of fact as to Defendants' knowledge that Plaintiffs worked overtime hours, Pls.' 56.1 ¶¶ 33-35, 44-50, or Defendants' hours of operation, or Defendants' total number of employees, or Defendants' staffing structure, *id.* ¶¶ 3, 9-12, 23-28.  To the extent that Plaintiffs state that Defendants paid them hourly wages at rates below the NYLL minimum wage for the given year, *id.* ¶¶ 34-35, 46-50, Defendants' (procedurally improper) 56.1 Statement does not dispute these facts.  Defs.' Counterstatement 56.1 ¶¶ 5, 9, 13-18.  Therefore, Plaintiffs have established an absence of dispute of fact regarding Defendants' knowledge of the NYLL overtime and minimum wage claims.

### c.  Proving Improper Compensation

In addition to showing the employer's knowledge, to state an NYLL overtime or minimum wage claim, the employee must show they were improperly compensated.

"An employee discharges [their] burden at this first step if [they] . . . can prove that [they] in fact performed work for which [they were] improperly compensated and if [they] produce[] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Chichinadze*, 517 F. Supp. 3d at 252 (internal quotation marks omitted) (quoting *Hernandez v. Jrpac Inc.*, 2016 WL 3248493, at *27 (S.D.N.Y. June 9, 2016)).  "This burden is 'not high' and may be met 'through estimates based on [the employee's] own recollection.'"  *Id.*

19

(quoting *Hernandez*, 2016 WL 3248493, at *27).  Where an employer fails to maintain accurate records, a plaintiff can "submit evidence from which violations of the NYLL and damages may be reasonably inferred." *Cardenas*, 2021 WL 4480570, at *9 (citing *Chichinadze*, 517 F. Supp. 3d at 252).

After a plaintiff satisfies this burden, the "burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946); *see Teofilo v. Real Thai Cuisine Inc.*, 18-CV-7238 (KPF), 2021 WL 22716, at *3 (S.D.N.Y. Jan. 4, 2021); *Chichinadze*, 517 F. Supp. 3d at 255 (explaining that under the NYLL, "[d]efendants cannot discharge [their] burden merely by 'undermining the reasonableness' of Plaintiff's evidence that she was unpaid."); *cf. Chang v. Loui Amsterdam, Inc.*, 19-CV-3056 (RER), 2022 WL 4586100, at *11 (E.D.N.Y. Sept. 29, 2022) (stating, in relation to an NYLL spread-of-hours claim, that defendant's "conclusory assertion of compliance with the spread-of-hours requirements does not, by itself, create a genuine dispute of material fact.").

Defendants dispute that Plaintiffs met their burden by pointing out that "Plaintiff[s] rely exclusively on their own declarations and pleading [sic], which are contradicted by the Defendants['] own testimony and quarterly taxes[.]"  Defs.' Opp. at 7.  However, a plaintiff's recollection is sufficient to discharge the plaintiff's initial burden where the employer failed to maintain accurate records. *Feuer v. Cornerstone Hotels Corp.*, 14-CV-5388 (JFB) (SIL), 2020 WL 401787, at *4 (E.D.N.Y. Jan. 24, 2020); *cf. Chang*, 2022 WL 4586100, at *11 (denying summary judgment to plaintiff where defendant proffered time and payroll records that sufficiently

created an issue of fact with respect to plaintiff's NYLL overtime and minimum wage claim, but granting summary judgment as to the NYLL spread-of-hours claim because defendant did not rebut plaintiff's recollection on that claim); *Junmin Shen v. Number One Fresco Tortillas, Inc.*, 16-CV-2015, 2018 WL 6712771, at *9-10 (S.D.N.Y. Nov. 26, 2018) (concluding that plaintiffs "have carried their burden of demonstrating that they are entitled to compensation for unpaid overtime work" because they "consistently testified that they worked more than forty hours per week," defendants "did not maintain accurate records of [p]laintiffs' hours worked," and defendants' testimony was "both conflicting and at odds with their own time sheets"); *Hernandez*, 2016 WL 3248493, at *6-7, 28 (finding that employees' "declarations and live testimony as to their recollections of their hours worked" established their overtime hours where the employers' timesheets were created retrospectively).

The Court finds that Plaintiffs Zambrano and Jaramillo have met their initial burden by showing they were improperly compensated under the NYLL. Moreover, the Court finds that Defendants have not provided sufficient evidence to overcome the NYLL's stringent burden to "negative the reasonableness of the inference" drawn from Plaintiff's testimony. *Anderson*, 328 U.S. at 687-88.

### i.    Overtime

With respect to Plaintiffs' overtime claim, Plaintiffs assert that "[d]uring [their] employment, Plaintiffs were not required to sign in or out, and Defendants did not otherwise maintain records of Plaintiffs' work hours," Pls.' 56.1 ¶ 13, and that "[n]either the plaintiff nor the defendants have any records regarding their specific schedules or specific dates lack records [sic]," Defs.' Counter 56.1 ¶ 11.

Since Defendants did not maintain records, Pls.' Reply 56.1 at 4 (demonstrating that both parties concede that "[n]either the plaintiff nor the defendants have any records regarding their specific schedules or specific dates"), Plaintiffs can prove improper compensation through their own "recollection," and this "recollection" may be presented in Plaintiffs' "sworn testimony." *See Hernandez v. Bella Notte of Syosset Inc.*, 20-CV-1647 (JMA) (AYS), 2022 WL 3912574, at *4 (E.D.N.Y. Aug. 31, 2022) (finding that a plaintiff met their burden based on recollection contained in their declaration and 56.1 statement); *Asencio*, 2025 WL 642250, at *2-3 (finding that a plaintiff satisfied her initial burden based on her recollection of her hours worked in her deposition, combined with text messages provided by plaintiff showing her travel times to her workplace). Plaintiff Zambrano stated in her declaration and deposition that during her employment, she regularly worked five days a week, from approximately 9:00 a.m. to between 8:30 p.m. and 9:00 p.m. Pls.' 56.1 ¶ 33. Plaintiff Jaramillo stated in her declaration and deposition that from around November 2013 until around April 2020 she regularly worked four varied days per week from approximately 9:00 a.m. to approximately 9:00 p.m., and from around April 2020 until around December 21, 2020 she regularly worked four days per week from approximately 9:00 a.m. to approximately 8:30 p.m. *Id.* ¶ 44-45. Therefore, both Plaintiffs stated their recollection of hours worked in their sworn testimony. Although both Plaintiffs' work estimates suggest that they worked more than forty hours a week, Plaintiffs assert that Defendants did not pay them a higher wage for their overtime hours. *Id.* ¶¶ 34-35, 46-50. These assertions satisfy Plaintiff's initial burden.

### ii.    Minimum Wage

With respect to Plaintiffs' minimum wage claim, the Court also finds that Plaintiffs met their initial burden. Like an overtime claim, where an employer failed to maintain accurate

records, to demonstrate a minimum wage claim, Plaintiffs must provide "sufficient evidence from which violations of the [NYLL] and the amount of an award may be reasonably inferred." *Chichinadze*, 517 F. Supp. 3d at 255 (citations omitted).  Plaintiffs' 56.1 Statement states that Plaintiff Zambrano was only paid $9.00 per hour from January 2011 to December 2019, and $10.00 per hour from January 2020 until Zambrano stopped working for Defendants in March 2021.  Pls.' 56.1 ¶¶ 34-35.  Plaintiffs' 56.1 Statement states that Plaintiff Jaramillo was paid an hourly wage of $7.00 in 2016, $7.50 in 2017, $8.00 in 2018, $9.00 in 2019, and $9.50 from January 2020, until Jaramillo stopped working for Defendant in December 2020.  *Id.* at ¶¶ 46-60.  Both Plaintiffs were paid less than the NYLL's minimum wage.  *See* N.Y. LAB. LAW § 652.  And like the overtime wage claim, Plaintiffs' burden under the minimum wage claim is discharged by looking to Plaintiffs' sworn testimony or declaration.  *See Bella Notte*, 2022 WL 3912574, at *4-5.

Because Plaintiffs have met their initial burden showing that they were not properly compensated pursuant to NYLL's overtime and minimum wage requirements, the burden shifts to Defendants to "demonstrate by a preponderance of the evidence that [they] in fact paid [their] employees" as the NYLL required.  *Chichinadze*, 517 F. Supp. 3d at 252.

Defendants fail to demonstrate that they "in fact paid their employees 'wages, benefits and wage supplements[,]'" as provided by the NYLL.  *Chichinadze*, 517 F. Supp. 3d at 253. Defendants' opposition does not even attempt to assert that they in fact paid Plaintiffs proper overtime compensation or minimum wages.  Defs.' Opp. at 7.  Instead, Defendants attempt to rebut Plaintiffs' NYLL initial burden by arguing that "Plaintiff[s] rely exclusively on their own declarations and pleading [sic] which are contradicted by the Defendants [sic] own testimony and quarterly taxes" and therefore, material disputes of fact remain precluding summary judgment.  *Id.* Defendants argue that Plaintiff Zambrano's recollection of work hours does not fit with her

schedule of taking her children to school. *Id.* Defendants appear to raise this and other facts to discredit Plaintiffs. However, these are exactly the type of arguments "undermining [the] reasonableness" of Plaintiff's evidence, *Chichinadze*, 517 F. Supp. 3d at 255, that are insufficient to discharge Defendants' burden under the NYLL.

Because Plaintiffs satisfied their initial burden, and Defendants failed to rebut it, Plaintiffs are entitled to summary judgment on their NYLL overtime and minimum wage claims.

### 3.    NYLL Spread-of-Hours (Claim Four)

Plaintiffs' fourth cause of action asserts an NYLL spread-of-hours claim against Defendants. Under the NYLL, an employer must pay "one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required . . . for any day in which . . . the spread of hours exceeds 10 hours." N.Y. COMP. CODES R. & REGS. tit. 12 § 142-2.4. New York law defines "[s]pread of hours" as "the interval between the beginning and end of an employee's workday." *Id.* § 142-3.16.

Plaintiffs satisfied their burden by asserting that while they were employed by Defendants, they regularly worked shifts spanning more than ten hours a day but were not paid spread of hours pay of one additional hour's pay at the full minimum wage rate. Pls.' 56.1 ¶¶ 33, 44-45.

In response, the burden shifts to Defendants. Defendants assert that "[t]here are genuine issues of fact as to the period of time, rate of pay and the spread of hours worked by the Plaintiffs herein[,]" Defs.' Opp. at 7, but do not cite to evidence in support of their assertion. Therefore, Defendants' unsworn and unsupported statements are insufficient to create a genuine dispute of material fact as to whether Defendants complied with the spread-of-hours requirement. Thus, Defendants have not met their burden under the NYLL to show "by a preponderance of the evidence that it in fact paid its employees" spread-of-hours compensation. *See Chichinadze*, 517

F. Supp. 3d at 253.  Accordingly, Plaintiffs are entitled to summary judgment on their spread-of-hours claim.

### 4.    NYLL Failure to Provide Payroll Notices (Claim Five) and Failure to Provide Wage Statements (Claim Six)

Plaintiff asserts two claims under NYLL §§ 195(1) and 195(3).  *See* Am. Compl ¶¶ 126, 133.  Under NYLL § 195(1), employers are required to provide employees with written notice of their rate, how it will be paid ("by the hour, shift, day, week, salary, piece, commission or other"), allowances, ("including tip") and the employer's address and contact information.  N.Y. LAB. LAW § 195(1)(a).  Additionally, under NYLL § 195(3), each employer must also "furnish each employee with a statement of every payment of wages."  *Id.* § 195(3).  Section 198 of the NYLL allows the Plaintiff, pursuant to §§ 198(1-b), (1-d), to seek damages for Defendants' alleged failure to comply with both § 195(1)(a) and § 195(3).[5]  Plaintiffs allege that "Defendants failed to furnish to Plaintiffs . . . notices containing the rate or rates of pay and basis thereof . . . ."  Am. Compl. ¶ 126.  Plaintiffs allege that Defendants did not provide with each payment a statement that listed "the regular hourly rates of pay; overtime rates of pay; number of regular hours worked…"  *id.* ¶ 133.

The NYLL requires every employer to provide employees – at the time of hiring – with, *inter alia*, "a notice containing . . . the rate or rates of pay and basis thereof; . . . allowances, if any, claimed as part of the minimum wage . . .; [and] the regular pay day designated by the employer."  Employers must also "obtain from the employee a signed and dated written acknowledgement . . . of receipt of [the wage] notice," and "preserve and maintain" the wage notice for six years.  N.Y. LAB. LAW § 195(1).

---

[5] An employer's failure to comply with either section of the law makes them liable for damages for each instance that the violations occurred or continued to occur.  *See* N.Y. LAB. LAW § 198(1-b) (stating that damages for wage notice violations under § 195(1) accumulate at rate of $50 per day, but not to exceed $5,000); § 198(1-d) (stating that damages for wage statement violations under § 195(3) accumulate at rate of $50 per day but may not exceed $5,000).

Under the NYLL, employers are also required to "furnish each employee with a statement with every payment of wages, listing . . . the dates of work covered by that payment of wages; . . . rate or rates of pay and basis thereof . . . ; [and] gross wages; deductions; [and] allowances." The wage statement must also include "the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked." N.Y. LAB. LAW § 195(3).

The Second Circuit's recent decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024) clarified the standing requirements for claims brought under NYLL § 195(1) and § 195(3). Accordingly, the Court *sua sponte* applies *Guthrie* to assure itself that Plaintiffs have standing to bring these claims. "When raised in federal court, claims for violation of these statutory provisions are subject to Article III standing requirements. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). To establish standing, a plaintiff must demonstrate that (1) she has "suffered an injury in fact that is concrete, particularized, and actual or imminent;" (2) "the injury was likely caused by the defendant[s];" and (3) judicial relief would likely redress plaintiff's injury. *Id.* at 423; *Rosario v. Prasad Cosm. Surgery*, 21-CV-02944 (NCM) (AYS), 2025 WL 486636, at *2 (E.D.N.Y. Feb. 13, 2025).

The Second Circuit's decision in *Guthrie* clarified what a plaintiff must show to establish standing to bring a wage notice or wage statement claim under NYLL § 195. *Guthrie*, 113 F.4th at 305 (internal quotation and citation omitted). The *Guthrie* court confirmed that *TransUnion* holds that "a plaintiff cannot rely on 'technical violations' of the [NYLL] but must allege 'actual injuries suffered as a result of the alleged' . . . wage notice and wage statement violations." *Id.* at 305 (citation omitted). Analyzing *TransUnion, Guthrie* noted that the Supreme Court rejected the concept of purely "informational injury" and clarified that "[a]n 'asserted informational injury that

causes no adverse effects cannot satisfy Article III.'"  *Id.* at 307.  Thus, "a plaintiff must show

some causal connection between the lack of accurate notices and the downstream harm" to

plausibly allege a NYLL violation.  *Id.* at 308.  The Court held that:

> A plaintiff-employee *may* have suffered an injury-in-fact sufficient to establish
> standing when, for example, inaccurate or noncompliant notices prevented the
> employee from obtaining full payment of wages in a timely fashion. But the
> plaintiff-employee cannot 'assume[ ] [t]his conclusion without analysis' or rely on
> 'speculation and conjecture.' Rather, the plaintiff-employee must support a
> plausible 'theory as to how he was injured by [the] defendants' failure to provide
> the required documents.'

*Id.* at 309 (citation omitted).  Allegations of "potential harms that *could* result" are insufficient.  *Id.*

at 310 (emphasis in original).  "In the wake of *Guthrie*, Courts in this Circuit are in agreement that

a plaintiff has standing if [they] plausibly allege[] that, by failing to provide the required wage

statements, the employer was 'able to hide [its] violations of wage and hour laws' and thus prevent

the employee from 'determining and seeking payment for the precise amount of [his] unpaid

wages.'"  *Roma v. David Carmili, Physician, P.C.*, 761 F. Supp. 3d 481, 490 (E.D.N.Y. 2024)

(quotations omitted) (collecting cases).

Here, Plaintiffs allege that "Defendants injured Plaintiffs by failing to provide them with

complete and accurate information about the terms of [] compensation, which resulted in the

underpayment of their wages." Am. Compl. ¶ 129.  Plaintiffs also allege that "Defendants' failure

to provide Plaintiffs with such information caused Plaintiffs to endure uncertainty regarding their

wages and prevented them from taking action to correct Defendants' wage and hour violations as

Plaintiffs had no means to confirm that they were being compensated in accordance with the terms

of their employment[.]" *Id.* ¶ 128.  These allegations are sufficient to establish standing.  *Rosas v.

M & M LA Solucion Flat Fixed Inc.*, 23-CV-1212 (DG) (MMH), 2024 WL 4131905, at *12

(E.D.N.Y. Sept. 10, 2024) ("Plaintiffs sufficiently establish Article III standing when they allege

that the denial of the statutory right to wage notices and wage statements ultimately resulted in underpayment" and "Defendants' alleged failure to provide wage notices and wage statements caused [them] to endure uncertainty regarding [their] wages and prevented [them] from taking action to correct Defendants' wage and hour violations"); *see, e.g., Roma v. David Carmili, Physician, P.C.*, 23-CV-04072, 2024 WL 5152211, at *5 (E.D.N.Y. Dec. 18, 2024) (finding plaintiff demonstrated standing by, among other things, alleging that defendants' failure to provide wage statements prevented her from "correcting issues with deductions and discrepancies" in her pay).

Having assured itself that Plaintiffs have standing, the Court now turns to the merits of Plaintiffs' arguments for summary judgment on the payroll notice and wage statement claims.

Plaintiffs assert that they are entitled to summary judgment because "[i]t is undisputed that Defendants never provided Plaintiffs with the required notices containing their rate or rates of pay and basis thereof, when they began working or when they received raises[,]" Pls.' Mem. at 17, and "Defendants do not dispute that they never provided wage statements to Plaintiffs[,]" *id.* at 18. Defendants "acknowledge[]" their "failures" to provide Plaintiffs with the required statements under Section 195 and concede that "[s]ummary judgment should be granted on the Plaintiffs['] motion on their Section 195 claims[.]" Defs.' Opp. at 8.

Because there is no dispute that Defendants failed to comply with the law and the parties agree that Plaintiffs are entitled to judgment as a matter of law, Plaintiffs are entitled to summary judgment on their NYLL spread-of-hours and failure to provide payroll notices claims.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is denied as to Plaintiffs' FLSA overtime claim (claim one) and granted as to Plaintiffs' NYLL minimum wage

(claim three) and overtime violation (claim two) claims, spread-of-hours claim (claim four), and Plaintiffs' NYLL wage notice (claim five) and wage statement claims (claim six).

Accordingly, judgment shall be entered in favor of Plaintiffs on their NYLL minimum wage and overtime violation claims, spread of hours claim, and NYLL wage notice and wage statement claims, and the parties shall procced to trial on Plaintiffs' FLSA overtime claim.

SO ORDERED.

/s/
ORELIA E. MERCHANT
United States District Judge

July 1, 2025
Brooklyn, New York